In his brief, he challenges the denial of his motion to suppress and also raises procedural challenges to his sentence. I will focus on the suppression issue first and address the suppressing issue with any remaining time. The evidence discovered during the execution of the search warrant as well as Mr. Roberts' statements must be suppressed. First, law enforcement lacked probable cause for the search warrant and the good faith exception does not apply under these circumstances. Looking to the totality of the circumstances of the evidence and facts put forward in the affidavit, it only establishes a hunch that Mr. Roberts was involved in criminal activity, specifically the shooting at Village Inn on the night of the shooting. The evidence does not support the doubt that a Dodge Durango was at the scene of the shooting and that a couple weeks later, Mr. Roberts was seen driving a Dodge Durango. There's no evidence to support that it was the same Dodge Durango or connecting the two or establishing that Mr. Roberts was actually at Village Inn at the night of the shooting in question. I think the stronger argument here is that there's no evidence that evidence of a crime would be discovered either at the apartment or inside the Dodge Durango. The case law indicates that it's not enough or a warrant to show that someone may have committed a crime. There must be an indication that there would be evidence found at the location sought to be searched. There was no allegation or evidence to establish that he was the shooter, so there's no evidence to support that there would be evidence of criminality found at these locations. And for the same reasons, good faith doesn't apply under these circumstances. Based off of hunches that first off, it's the same Dodge Durango and also that Mr. Roberts was the person driving that Dodge Durango on that night in question. Because the search was unlawful, the statements were fruit of that illegal search and must be excluded. Mr. Roberts' statements were but for pause of this illegal search. He was questioned while the search was... Counsel, before you get to that, I do have a question. Assuming without conceding that the search warrant was valid, does it ultimately matter that there may have been problems with the Miranda warrant? I think it does, and we're arguing still that... We've argued it in the alternative, and even if this court finds that the warrant was valid and the search was proper, would still want to pursue challenging his statements and that those would not be admissible in any kind of trial. So we do want to make that alternative argument, yes. Well, I do have another question then, and I'd like you to maybe clarify for me. And I'll ask this to the government as well, but on page 26 of the government's brief, they state that Roberts was, quote, informed he was free to leave, end quote. Could you clarify that for me? I don't think he was ever told he was free to leave, Your Honor. Those... And pages 37 and 67 of the suppression transcript clarifies that he was never told he was free to leave. He was told that he didn't have to answer their questions, and he was told that he was not under arrest. Those are, in our opinion, two very different things. So no, he was not told that he was free to leave. And I will turn next to use that as a transition into the custody argument. Mr. Roberts' statements... On the probable cause, with respect to what's in the car and so forth, wasn't it in the warrant affidavit that Flournoy and the defendant were in the Durango when it was stopped in, what, May, a couple months before the shooting? Yes, Your Honor. But it doesn't establish that it's the same Durango. But there is evidence in the affidavit to state that, not in the night in question, but that Mr. Roberts and Mr. Flournoy had been seen together. And our position is that still does not rise to the level of probable cause, and it's just hunch and jumping to conclusions that it must have been Mr. Roberts there at the night of the shooting. Going to the statements, the statements were in violation of Miranda because he was in custody. Alternatively, the statements must be excluded because any statement wasn't voluntary. Mr. Roberts was in custody from the moment that he was taken out of his house, handcuffed, and taken into the SUV for questioning. Because he was not provided a Miranda warning until roughly 15 minutes into the interrogation, the statements must be excluded. Looking at the custody factors as laid out by this court, Mr. Roberts would not have felt free to terminate or end or leave the encounter once he was questioned in the SUV. Just as... Didn't he do so? His girlfriend came up to the car and said, if you're not under arrest, you can get out of there. He gets out of there and he talks with her for several minutes outside the car, and then he chooses to come back in. So how does he not, based on those facts, understand that he's free to leave and he's not under arrest at that point? Well, I think there's other crucial aspects of that point in the interrogation. Well, first, I would note that that didn't happen until after Miranda was actually given. But when his girlfriend did come and try to speak to him, at first he was told no. And then the girlfriend said, well, he's not under arrest. Again, there's no statement of free to leave. But even when Mr. Roberts got out of the car, another officer got out with him and stood nearby and watched over them. That would indicate that while he's okay to talk to his girlfriend, that he's not free to leave. And so that interaction is not over. Could that also indicate, Ms. Quick, that the officer is simply there for protective purposes? I don't think there's anything in the record to support that that would be necessary, that it was necessary to protect, especially because Mr. Roberts had been patted down and searched at the point that he was brought out of his home and he did not have anything on him. And there's no indication that she would need to be protected, especially since she wanted to speak to him. Was there any indication of whether she had been frisked and whether she had been patted down to determine whether she had any weapons? No, there's nothing to establish that in the record, Your Honor. But still looking to whether an individual would feel free to leave. Again, this is after Miranda was eventually provided. I think it was 57 minutes roughly into the interrogation. Still would not because there wasn't a question of would you like to come back into the car? Mr. Roberts from the very beginning was not asked. He acquiesced and the police officers could not testify to whether he actually agreed. And that's not picked up on any of the audio recordings, even from the very beginning. Why wasn't that a supervening event that nullifies any Miranda issue? That after being Mirandized, he came back and not only got back in the car, but talked for three hours. I think this goes into the whether a midstream Miranda warning was sufficient. And our position is that the midstream Miranda warning doesn't purge any of the taint of the initial improper interrogation because at the point before he's Mirandized, he already does make incriminating statements. Counsel, if it's ambiguous as to whether or not And we're not really contesting any of the facts in what the district court found. We're disputing the characterization of those facts and what they establish. But looking to just the circumstances, pointing out to some of the other circumstances, I think it's important to go back to the beginning. He's handcuffed and patted down. Under this circuit's case law, that's generally a strong indicator that someone is in custody. Handcuffing, while not conclusive, is very strong indications that an individual would not feel free to leave. I would want to point out also that I'm not sure that's true in the context of a warrant search, particularly one that had been pretty rough and tumble. We have the Supreme Court case that had a warrant search with him where they made all the people go out in the yard and then detained them and so forth. That circumstance is quite different than an on-the-street encounter, let's say. Isn't that true? It is different, Your Honor. It is distinguishable in those circumstances. Still, looking at the case law, I do think it's a factor that does weigh heavily and is important. The case I looked at was the Martinez case in 2006. I don't believe that's one that's... I think that's an on-the-street encounter, as the court was talking about. I don't believe that's one that was after the execution of the search warrant. But I think it also is important, looking at the handcuffing, because we disagree with the idea that he was asked, would you like to come speak to us? But when he was told they wanted to talk to him, he was still handcuffed at that point. So to say he agreed to go speak with the officers when he's not asked and he's handcuffed, we would dispute that that is an indicator that he was not in custody. Again, weighs in the factor that he was in custody. What about his agreement, though, to go down to the police station and continue the conversation or the interrogation, however you want to phrase it? Is that again another superseding event, as Judge Loken had indicated? No, Your Honor. And this is where the superseding or the midstream or random warning case law comes in. If this had been a situation where maybe it was like the next day, he went down to the station and talked to them, I think we'd have a much more difficult argument. But here, he's arrested at the conclusion of the questioning and taken down to the police station. It started at 7 a.m. is when they executed the search warrant. He goes down to the station at 2 p.m. So there's not enough time, there's not enough intervening factors to distinguish this from the initial random violation that occurred in the SUV. And he wasn't provided a Miranda warning at the time that he was at the station either, which the party stipulated to. Can we take into account the fact that Mr. Roberts has a criminal history, he has some experience with the criminal justice system, he knows that he could seek counsel before answering questions. Can we take that into account here? So I think that comes into account with the voluntariness aspect of it, that voluntariness challenge separate to the custody. But I don't think it comes into play as far as the custody analysis and whether an individual would have felt free to leave under those specific circumstances. So I do